we'll hear the next case R.B. v. New York City Department of Education. You can proceed. May it please the court, my name is Gary Mayerson. I represented D.B. throughout the proceedings starting with the trial level and we continue to do so. There are two significant events that occurred since we've briefed this case that I need to bring to this court's attention. One is the obvious one, which is the Supreme Court's 8-0 unanimous decision in Andrew F., which I'll be talking about in a moment, but the other one just happened last night and I've shared this with counsel. The New York State Department of Education came out with an eight-page policy memorandum on the issue of transition, which is the core issue in our case, not only telling all the school districts how incredibly important transition is, but explaining what all the districts have to do in order to comply with the federal and state requirements. It basically mirrors everything we say in our brief and I would like to either submit it to the court now or perhaps in just a letter provided to the court. You can submit it attached to a letter. Thank you, Judge. Yes. Okay. During oral argument in the Andrew F. case, which we had an amicus role in that case, Justice Alito referred to the IEP process and to the federal IDEA statute as a, quote, blizzard of words. It could not be more apt. Every case this court gets has nine million acronyms that have to be waded through and I hope to be able to wade through and cut through the blizzard to shed some light on this issue. DB, the student at issue, is diagnosed with autism, but he's been verbal and conversational and is able to answer questions. He has the ability to weigh in with his own interests and his own desires. As this court is aware, two school years were at issue, 13-14 and 14-15. And when he turned 15, this is the trigger point and which distinguishes this from prior years. He was entitled to a number of things which have to do with the all-important issue of transition, that is, preparing children with disabilities, in this case autism, for the fateful day when they will leave the educational system and enter into society, when they will transition into society. And when he turned 15, which was during the 2013-2014 school year, there were four things that should have happened that did not happen in this case. The statute talks about the requirement of providing age-appropriate transition evaluations, age-appropriate. That must apply to the student. It's not talking about anyone else. I can't imagine the mother... Does it mean an in-person interview of that student? I submit that it does require that and that you can... Yes, Your Honor. Is there anything that tells us that, other than the general language? Well, if you look at all the statutory requirements and not only the one about doing the evaluation, but the next one, develop goals and objectives, it says based on the age-appropriate evaluations. Let me assume that you are right, that either the federal or the state, which is broader, requires an in-person evaluation. And if it really were the state, that's the question, and that were determinative, perhaps we would have to certify to find out whether the state actually does. But let's assume for the moment that there is a procedural violation here and that they should have had an in-person. That is not ultimately determinative. That is, what is ultimately determinative is if there was a significant, whether it caused a deprivation of educational benefits, whether it impeded the right, all of those things, and there the district court found an unusually careful SRO that went through all of those things and found that there was enough in a transition year. Now, what I want to know is, even if we assume that there was a procedural violation, which sufficient for us to say this youngster did receive all that the statute wanted, given that the Supreme Court has told us how important that statute is? Okay. I will address your question, Judge Calabresi. First of all, there were four procedural violations, not one, there were four, and let me listen before I talk about the impede argument, which is so very important that you've alerted us to. First, there was a failure to do the age-appropriate assessment, which is a vocational assessment. That's the foundation of the House. That's the beginning of everything else that was to follow. Secondly, they failed to develop goals and objectives that were based on the age-appropriate assessments, and that is also a requirement of the federal law. And three, they failed to develop services, again, that were based on the age-appropriate assessments, and the statute talks about that. So that's three things. So what do they do? There's a little section in the IEP where they talk about the goals and objectives. They're not measurable goals and objectives. They do this checklist approach, which is exactly the approach that the Andrew F. Court said you should not do. This is not a checklist. This is a very careful procedure that really applies to the child's individual needs. Now I'm going to address your question, Judge. The statute talks about if the student's ability to get a FAPE is impeded, and the very next sentence talks about, or if the parent's right to the IEP process is substantially impeded. What does that tell us? That the impeded requirement is a lesser standard even than the substantially impeded requirement. So in other words, it just means some restriction, some hindrance. It is not as high as a substantial impedance argument is our position. So on this one, you have four waypoints, and again, unless you do the foundation of the age-appropriate assessments. In the end, the question is, even if impeded is less than substantially impeded, which is over by the district court, that there wasn't a substant, an impeding in this youngster's case has sufficiently behind it that we should affirm. Yes, and I think that what you called a carefully constructed argument by the SRO, both the SRO and the district court at page 10 of the district court's decision, I think makes clear that the district court embraced the very standard that the NJRF court has now rejected as too low. So the district court said, cited the case that talked about just barely more than de minimis or words to that effect. That's exactly what the NJRF court said in the Supreme Court that is not permissible anymore. Now, I'm not faulting the district court because obviously this court and other courts have been . . . The language, because the holding of the language are a little bit different things by the Supreme Court. If there was a remand, I'm not requesting it. I think this court need not remand. I think this court has enough of a record before it to decide the case because it's just prong one. It's not prongs two and three. But if this court were to remand, we would ask that it be remanded with instructions to consider not only the impact of NJRF, but also the impact of the state's April, whatever yesterday's date was, policy memorandum on transition because it's really . . . To the extent that the district court said, we have to . . . The language that the district court uses is that under the IDEA, states have an affirmative obligation to provide an education likely to produce progress and one that affords the greater than mere trivial advancement. That's . . . Yes, Judge, because the greater than mere trivial advancement standard has now been fingered by the Supreme Court as being an unduly low standard that is now . . . It's a much more robust standard that's much more child-centered that is based on assessments. You look through the NJRF decision, it's just . . . There's just constant references to quote, a focus on the particular child is at the core of the IDEA. How do you do that without assessing the child's transition? You're doing an assessment of the child themselves. The IEP is the centerpiece and must be drafted in compliance with a detailed set of procedures. These procedural rules, we're not asking you to come up with a rule, we're asking you to enforce the rule. When you say they didn't do an age-appropriate assessment, what exactly is the deficiency? Well, if you look at, I think it's page 10 or 11 of our main brief, it shows what the level 1, level 2, and level 3 assessments look like. And they can choose, depending on the child's functioning level, which assessment to employ. So when they're talking about age-appropriate, what they're really saying is developmentally, functionally appropriate for the child. So if you have a child that's verbal . . . What should they have done that they didn't do? Well, they should have done an assessment where they actually took the child the same way they would do a speech and language assessment or an occupational therapy assessment. And somebody who has the ability to . . . It's back to the point that they didn't do an in-person assessment. Well, they didn't ask them any questions or didn't ask them to respond and say . . . Did they not invite him to come to the meeting? Very, very important point. Assessments never happen at the IEP meeting. We've been doing this for 20 years. Assessments do not happen at the IEP meeting. But if they do, if they ever do, it's because someone requested it and said, we want to assess your child at the meeting. Please give us your consent. They never asked for consent to do an assessment at the meeting. And this parent . . . Is there not a general request where the parent said, no, we've got an evaluation? No, it wasn't a request, Your Honor. What it is, and the state guidelines make very clear that you don't have to bring the child. The child has the right to be there if the child wants to be there. We're not faulting the parents for choosing not to bring the child. That made a lot of sense. But to the extent that the child, if the child had been there, some of the things you are objecting to now would not be a problem. That has to be taken into account. Now, you're saying it's a separate thing. They should have asked to see the child individually and privately. I think, Judge, that to give them the speculative advantage and say they could have done an assessment. There was no notice of an assessment to be done there. I don't think you can give the district credit on that one. If they wanted to do an assessment at that IEP meeting, we would have consented had they just given us notice and said, bring your child, we wish to do an assessment. But there was really- So you see no problem with the following. That is, the district wants to do an assessment, asks to do an in-person assessment of the child. And for legitimate reasons, the parents say no. Then what's the upshot of that? Well, that didn't happen here, but if- I understand that. But if parents refuse to do an assessment, if they refuse to give consent to an assessment- Well, to an in-person interview of the child, yes. If a parent refuses to allow the school district to do an in-person assessment of the school district, it could be considered under prong three equitable circumstances to the extent under the Burlington-Carter test for reimbursement as to whether the parents engaged in inequitable or inequitable conduct. But of course, that never happened here, because no consent was ever requested, and no consent was ever refused. It was simply, come to an IEP meeting. You're well over. You have some time for rebuttal. Thank you, Chair. Good morning, your honors. Julie Steiner for the Department of Education. The only procedural violation that is alleged by the plaintiffs is that the child was not interviewed in person. The ultimate issues or the four things that plaintiffs are alleging ultimately all boil down to my child was not interviewed. And that one singular violation does not amount to a denial of FAPE, even under the Andrew F standard that the United States Supreme Court just articulated. Andrew F specifically requires that the IEP be reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. And the IEPs, both of them, the 1314 and 1415 in this case, were specific and individualized for this child. It was, they both were appropriately ambitious to take into account the child's interests, likes, dislikes. The question is, could they be without seeing the child directly? Now, you know, I know that a violation does not mean that the FAPE was not adequate. But the question is, was this violation in this circumstance such that the FAPE could not be given as it was? No, your honor. In fact, if you take a look at the state statute, or the state regulations, excuse me, from where my adversary is alleging the violation occurred, it says shall receive an assessment that includes school records, a review of school records, that was clearly done here. Teacher assessments, absolutely. In fact, this child attended the Rebecca School since 2009, 2010. The assessments from the teachers there. Exactly, from the teachers that know him arguably extremely well. Parent interviews, yes, that took place here twice. And yes, it does say student interviews. To the extent that this means in-person interview as this court is questioning, it's not clear. But assuming that it did say in-person interview, no, that was not done. But in its place, the parent who admitted, my child is 16, I've lived with him for 16 years, I know him intimately well. The parent who has attended monthly meetings with the school and has spoken weekly with these providers knows her child intimately well. She is a more than appropriate resource to articulate what her child needs, wants, doesn't like, etc. So when you take a look at everything in its entirety, what was done here did not result in a denial of a FAPE. Do you agree that there was a procedural violation? To the extent that we were required under the state regs to interview the child, yes, there was a procedural violation. This court has held that. But as your honor has articulated, this singular procedural violation standing alone when viewed in context of what else transpired here and what else the committee on special education had regarding this child, no FAPE occurred. Does it matter that the original IHO ruled the other way, which I know doesn't matter if the SRO is fine, but should we look at that in the light of a procedural violation? That is to say, here you have an initial hearing officer who says that is not enough. You have an SRO that comes out the other way, and you have a procedural violation. Does that turn it into? Your honors, I don't believe that it does turn it. In fact, in NJUF, the court specifically, if I can get the exact language, the court specifically held that you must defer to the administrative officer's cogent and articulate and reasonable explanation. When you compare the two, the IHO and the SRO in this particular case, and as your honor has already articulated, the SRO was unusually careful in this case. The SRO went through every bit of information, evidence, and to the IHO, who did not, and so it is the SRO to whom deference in this particular case is afforded when you consider the amount of analysis that occurred and what NJUF is requiring this court to do, unless the court has any other questions. Thank you, your honors. Thank you. Will you hear the rebuttal? Whereas here, the issue is a question of law. The interpretation or enforcement of a federal statute. No deference is owed to the SRO of any kind. This court has held that before, and that's exactly the situation we have here. We don't have a singular violation here. The SRO said, acknowledged that there was one, the failure to do the age appropriate assessment. But the statute also talks about, and we highlight this in our brief, that it basically winds up being four violations. Failure to do the age appropriate assessments, failure to develop any goals whatsoever based on the- Are they not all based on the failure to interview the child? They're based on it, but it's almost like you're building a house. The age appropriate assessments are the foundation of the house. Without that foundation, the house collapses. It's not reasonably calculated. This court has held time and again that the IEP has to be reasonably calculated. That's what NJUF talks about. How can it be reasonably calculated? It's so crazy that you have an opportunity to talk to a verbal student who can give you input and you do nothing. Aren't you practically saying that this procedural violation is such that where it occurs, everything else falls down? And if you're saying that, doesn't that run against our cases that say that these fundamental procedural violations may occur, but we still have to look at wherever the house stands? The answer is, because transition is so incredibly important, it is the main event once a child turns 15. Because they're done with the educational system at either 18 or 21, and whatever they've learned or not learned, it depends on whether they're going to be contributing members of society. Just the Supreme Court sent a message judge in NJUF, 8-0. And the state has just sent its policy member last night, which is also sending a message. So the question is, what message- Let me put the question in a slightly different way. Yes. Is there any scenario under which the failure to have an in-person evaluation of the student would not constitute such a fundamental procedural violation that everything else would fall? I would just like it in, I know that you were on the TK case, judge. And the TK case, different facts, a different scenario. The issue, the gravamen of the wrong was the fact that the parents were excluded from the IEP process. They were not allowed to talk about certain, bullying was the issue. Right. And in this case, it's the student himself who's being excluded from the IEP process. You're looking at everywhere else but the student. I'm not answering the question. The question was, where the student was excluded. Is that a kind of violation that you are saying, when that occurs, nothing else matters? That's the question. Yes, I will answer that question. I am taking the position that whereas here, transition is the main event. And where the statute is very clear and says there must be age appropriate assessments and goals and objectives based on those age appropriate assessments, that the failure to do that is so fundamental a failure that it amounts to a fate deprivation, certainly an impeding. I'm sorry, Judge. May I restate it, that whether that would be so for a younger child, you are saying that where the issue is age is transition, then that violation is so fundamental that nothing else can stand. Correct. Is that what you're saying? Yes, Judge. Because at the younger ages, there's still more time to deal with mistakes that could happen. But it- I just want to get you- Yes. Thank you. You're out of time. Thank you, Judge. Low reserve decision.